UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | No.: 3:22-CR-20-KAC-JEM-2 |
| JEFFREY L. SCALES, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) various motions related to the seizure of evidence "as the Result of a Traffic Stop" [Doc. 134] and "at 9310 Aldergate Way, Apt. #4107" [Doc 132] and (2) objections to the "Report and Recommendation" of Magistrate Judge Jill E. McCook ("Report") [Doc. 292] and related motions. [*See* Docs. 132, 134, 135, 309, 310, 325, 327]. The Court addresses each filing below. But the principal result is that the Court denies (1) the "Motion and Memorandum of Law of Defendant Keyasia Davis to Suppress Evidence Seized as the Result of a Traffic Stop" [Doc. 134] as it relates to Defendant Scales and (2) Defendant Scales's "Motion and Memorandum to Suppress Evidence Seized at 9310 Aldergate Way, Apt. #4107" [Doc. 132].

I. **Background**

On November 10, 2021, Investigator Evan Rogers of the Knox County Sheriff's Office began surveilling a pickup truck in the parking lot of a mall in Knoxville, Tennessee [Doc. 292 at 3]. He did so because the truck was parked suspiciously far from other vehicles in the lot [*Id.*]. Within a few minutes, a Jeep parked beside the truck [*Id.* at 4]. Investigator Rogers observed what he believed to be a hand-to-hand drug transaction between the individuals

in the Jeep and the truck [*Id.* at 13]. After the suspected hand-to-hand transaction, both vehicles drove away recklessly [*Id.* at 4].

Investigator Rogers pursued the truck and conducted a traffic stop [*Id.*]. According to Investigator Rogers, during the traffic stop the driver of the truck admitted that he was in the parking lot to purchase drugs [*Id.* at 4]. The driver stated that his drug dealer was in the Jeep [*Id.*]. The driver also told Investigator Rogers that the Jeep contained large quantities of drugs and that the occupants of the Jeep were armed [*Id.*]. Investigator Rogers found the driver to be truthful [*Id.*].

Based on his conversation with the driver of the truck, Investigator Rogers radioed other officers to stop the Jeep [*Id.*]. Investigator Rogers informed the other officers that the Jeep contained drugs and its occupants were armed [*Id.* at 13]. Based on the request from Investigator Rogers, Investigator Pope stopped the Jeep [*Id.* at 4, 13]. After Investigator Pope stopped the Jeep, he waited for Investigator Rogers and other officers to join him at the scene [*Id.* at 5]. Those officers arrived by approximately 6:55 p.m. [*Id.*].

By about 7:10 p.m., officers had removed four (4) people from the Jeep: Defendant Scales, who was driving; Keyasia Davis; Desmond McDaniels; and Sharde Simmon [*Id.* at 5, 13-14]. After removing Defendant Scales and the three (3) passengers from the Jeep, law enforcement handcuffed and frisked each of them [*Id.* at 9, 13]. No further evidence of illegal activity resulted from the frisk [*Id.* at 7]. Law enforcement asked for consent to search the Jeep, which they did not receive [*Id.* at 14]. Law enforcement then called for a K-9 unit to perform a free air sniff [*Id.*].

At about 7:20 p.m., the K-9 unit arrived [*Id.* at 5, 9]. The K-9 unit conducted a free air sniff, and the drug detection dog alerted to the Jeep [*Id.* at 10, 14]. After the dog alerted, law enforcement searched the Jeep [*Id.* at 14]. They found a package of marijuana, two (2) firearms,

2

cash, and four (4) cellphones [*Id.*]. They also discovered a set of keys on the driver's seat [*Id.*]. And a search of Davis's person incident to arrest yielded narcotics [*Id.*].

Later that same day, Detective John Sharp applied for a search warrant related to 9310 Aldergate Way, Apartment #4107 in Knoxville, Tennessee (the "Aldergate Way Apartment") [Doc. 138-1]. The application sought authorization to search for controlled substances, drug paraphernalia, electronic devices, and weapons, among other things [*Id.* at 1-2]. In the supporting affidavit, Detective Sharp detailed his general training and experience as a narcotics officers [*See id.* at 2-3]. He then explained the basis for probable cause, copied below without alteration:

> **The Investigation**
> Over the past 18 months, investigators have been investigating a drug trafficking organization (DTO) being led and managed by Martez WILSON.
>
> On November 10, 2021 at approximate 1915 hours,[1] investigators were conducting surveillance at 7600 Kingston Pike, West Town Mall. Investigators Evan Rogers and Don Pope observed a white Jeep Grand Cherokee pull up next to a white pickup truck and have a brief conversation. Believing that a drug deal had taken place, Investigator Rogers followed the white truck and subsequently initiated a traffic stop for reckless driving (racing) in the parking lot. Investigator Rogers found the white truck to be driven by Robert Henkle. Henkle told Investigator Rogers that he had met up with the white Jeep Grand Cherokee to purchase heroin. Henkle further explained that he was told to follow the Jeep to a different location. Henkle elaborated that he knew the Jeep to have drugs and guns in the vehicle.
>
> Once Investigator Rogers had this information, he relayed that information to Investigator Pope. Investigator Pope initiated a traffic stop on the Jeep Grand Cherokee and detained 4 individuals including Jeffrey SCALES and DAVIS. A subsequent free air sniff by a narcotics K-9 handled by Officer Halsey. Officer Halsey told investigators that his K-9 partner alerted to the presence of the odor of illegal drugs.

---

[1] Detective Sharp initially wrote "November 11, 2021" in the affidavit, but subsequently changed the date to November 10, added the time, and signed his initials affirming that he modified the text.

3

> A search of the vehicle revealed approximately 6 ounces if heroin individually packaged in small user amount baggys inside a larger bag. Investigators also recovered a large amount of US Currency throughout the vehicle, and 2 handguns. The 6 ounces of heroin was concealed in the pants of DAVIS. Also recovered from DAVIS was a key to at 9310 Aldergate Way, Apartment #4107, which is the apartment investigators are seeking to search.
>
> SCALES and DAVIS are both known subjects in an investigation into an on-going conspiracy to distribute heroin in the Knoxville, Tennessee, area.
>
> **Information from Reliable Confidential Source**
> On, or about, October 11, 2021, investigators spoke with CS-1, who has an intimate relationship with WILSON. CS-1 told investigators that WILSON, SCALES, DAVIS, and other individuals were operating a large drug organization which included the transport of significant quantities of heroin and bulk cash between Knoxville, Tennessee, and the Detroit, Michigan area.
>
> CS-1 told investigators that when in WILSON, SCALES, and DAVIS are in Knoxville, Tennessee, they store illegal drugs such as heroin, and bulk cash in an apartment that DAVIS and SCALES live in and is rented by "Emily." CS-1 sent investigators a picture of "Emily," and I was able to identify Emily LONG as the person who is currently renting 9310 Aldergate Way, Apartment #4107.
>
> Investigators were able to corroborate the information CS-1 gave by the use public information services and law enforcement databases. According to the Tennessee Department of Motor Vehicles, Experian, Equifax, and Bank Accounts, LONG is the renter and/or resident of 9310 Aldergate Way, Apartment #4107, which is consistent with CS-1's information.

[*Id.* at 3-4]. The application also included a table of legal authority; more information about Detective Sharp's experience investigating drug trafficking, including common patterns he learned in investigations; and Detective Sharp's conclusions that Davis, Long, and Wilson use the Aldergate Way Apartment to traffic drugs [*See id.* at 4-9].

A state judge signed the warrant, authorizing a search of the Aldergate Way Apartment [*See id.* at 14]. Law enforcement executed the search warrant that night [Doc. 292 at 14]. Search of the Aldergate Way Apartment yielded suspected heroin, marijuana, a ledger, cash, digital scales, cellphones, and six (6) firearms [*Id.*].

4

On March 16, 2022, a grand jury indicted Defendant Scales and ten (10) codefendants, including Davis, McDaniels, Simmon, and Wilson for various crimes involving drugs and firearms [*See* Doc. 7]. Defendant Scales filed a "Motion and Memorandum to Suppress Evidence Seized at 9310 Aldergate Way, Apt. #4107" [Doc. 132]. Defendant Davis filed a separate motion to "Suppress Evidence Seized as the Result of a Traffic Stop" [Doc. 134], which Defendant Scales moved to adopt [*See* Doc. 135]. After a hearing and thorough briefing on both motions, Judge McCook issued the Report [Doc. 292].

As it relates to the traffic stop, the Report concluded that "officers had reasonable suspicion to conduct an investigatory stop of the Jeep;" "the stop of the Jeep was not unduly" prolonged; and "officers had probable cause to search the Jeep based on an alert by a drug detection dog" [Doc. 292 at 2]. As it relates to the search of the Aldergate Way Apartment, the Report determined that "the search warrant" for the apartment "was not validly issued" but "the evidence seized in the execution of the search warrant need not be suppressed" because the officers who executed the warrant "relied on the search warrant in good faith" [*Id.* at 2-3]. Therefore, the Report recommended that the Court (1) grant Defendant Scales's motion to adopt Defendant Davis's motion to "Suppress Evidence Seized as the Result of a Traffic Stop" [Doc. 135], and (2) deny Defendant Davis's motion to "Suppress Evidence Seized as the Result of a Traffic Stop" [Doc. 134] and Defendant Scales's "Motion and Memorandum to Suppress Evidence Seized at 9310 Aldergate Way, Apt. #4107" [Doc. 132] [*See* Doc. 292 at 48].

Defendant Scales subsequently filed his own "Objections to the Report and Recommendation" [Doc. 327]. And he filed a "Motion to Adopt" [Doc. 325] the "Objection by the Defendant Keyasia Davis" [Doc. 309] and "Defendant Simmon's Objection" [Doc. 310], both of which raised objections to the Report. Because it will permit a full adjudication of the issues

5

related to Defendant Scales, the Court **GRANTS** Defendant Scales's "Motion to Adopt" [Doc. 325] to the extent objections raised by Defendants Davis and Simmon are relevant to Defendant Scales. Therefore, the Court will consider those objections to the Report raised in Docket entries 327, 309, and 310 as they relate to Defendant Scales. The United States filed an omnibus "Response to Defendants' Objections to the Report and Recommendation" [Doc. 353]. The Report, as it relates to Defendant Scales, is now before the undersigned.[2]

II.     Analysis

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a timely objection is made under Section 636(b)(1)(C) and that objection is not "frivolous, conclusive[,] or general," *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (alteration omitted), "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made," 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."). However, the Court need not engage in de novo review of undisputed portions of the Report. *See Mira*, 806 F.2d at 637.

**A. The Traffic Stop, Brief Detention, and Free Air Sniff Were Constitutional.**

The Court addresses Defendant Scales's objections temporally, beginning with the traffic stop, brief detention, and free air sniff, which were each constitutionally permissible. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[S]topping an automobile

---

[2] Defendants Davis and Simmon have pled guilty [*See* Docs. 399, 409].

6

and detaining its occupants constitute a 'seizure' within the meaning of" the Fourth Amendment. *United States v. Winters*, 782 F.3d 289, 295 (6th Cir. 2015) (alteration in original) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "The question of whether a particular traffic stop passes constitutional muster is analyzed under 'the standard for temporary detentions set forth in *Terry v. Ohio* . . . and its progeny.'" *Id.* at 295-96 (citation omitted) (quoting *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010)). "Under this framework, the stop must be 1) 'justified at its inception'; and 2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 296 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

Here, the investigatory traffic stop of the Jeep was justified at its inception based on reasonable suspicion. An "officer may conduct an investigatory stop only if he 'has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). "Reasonable suspicion 'must be based on specific, objective facts.'" *Id.* (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). Reasonable suspicion "requires that 'the detaining officers have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "Although a mere 'hunch' does not create reasonable suspicion . . . the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (citations omitted). Reasonable suspicion is assessed "based on the totality of circumstances in place at the time of seizure." *Johnson*, 620 F.3d at 692.

In totality, the circumstances on November 10, 2021 provided reasonable suspicion that Defendant Scales had been, was, or was about to be engaged in criminal activity. *See id.* While

7

surveilling a truck parked suspiciously far from other cars in a mall parking lot, Investigator Rogers watched individuals in the truck and the Jeep engage in what he believed was a hand-to-hand drug transaction [Doc. 292 at 4, 13]. Both vehicles then drove away recklessly [Doc. 292 at 13]. Upon questioning shortly thereafter, the driver of the truck admitted that he was in the parking lot to buy drugs from his drug dealer in the Jeep [*Id.*]. In addition, the driver relayed that the Jeep contained large quantities of drugs and that the occupants of the Jeep were armed [*Id.*]. Based on those facts, Investigator Rogers had a particularized and objective basis for suspecting Defendant Scales, an occupant of the Jeep, of criminal activity in the past or immediate future. *See Johnson*, 620 F.3d at 692; *United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007) (concluding that a tip about a subject's criminal activity in conjunction with that subject's activity being consistent with criminal behavior provided reasonable suspicion); *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (determining that reasonable suspicion existed where, among other things, the police witnessed "hand movements consistent with drug-dealing activity"); *United States v. Alexander*, 528 F. App'x 515, 519 (6th Cir. 2013) ("Hand-to-hand transactions consistent with drug transactions are 'highly probative' in evaluating reasonable suspicion." (quoting *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012))).

Investigator Rogers then radioed other officers to stop the Jeep, and its occupants, based on his reasonable suspicion [*Id.*]. Those other officers properly stopped the Jeep based on Investigator Rogers's reasonable suspicion [*Id.*]. *See United States v. Lyons*, 687 F.3d 754, 765-66 (6th Cir. 2012) ("It is well-established that an officer may conduct a stop based on information obtained by fellow officers. . . . [T]he collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion." (citations omitted)).

8

Next, the brief detention of Defendant Scales and delay to perform the free air sniff were also permissible because they were reasonable related in scope to the circumstances that justified the stop in the first place. "[W]hether the degree of intrusion was reasonably related in scope to the situation at hand" is "judged by examining the reasonableness of the officials' conduct given the suspicions and surrounding circumstances." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)). The degree of intrusion is reasonably related to the scope of the situation where: (1) the detention "was sufficiently limited in time" and (2) "the investigative means used" were "the least intrusive means reasonably available." *Davis*, 430 F.3d at 354 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 825-26 (6th Cir. 2005)). "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

***First***, the traffic stop lasted "no longer than [was] necessary to effectuate the purpose of the stop." *See Winters*, 782 F.3d at 296 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Law enforcement stopped the Jeep, removed Defendant Scales and the others from the Jeep, and sought consent to search [*See* Doc. 292 at 13-14]. After consent was denied, law enforcement called for a drug detection dog, which arrived only approximately twenty-five (25) minutes after the stop [*See id.* at 14]. That brief delay was reasonable in light of law enforcement's reasonable suspicion that the Jeep or its occupants contained or possessed drugs and firearms. *See, e.g.*, *Davis*, 430 F.3d at 355 (holding that a thirty-minute delay for a drug detection dog was reasonable given the police's reasonable suspicion that the defendant's car contained illegal drugs).

True, the initial frisk and investigation of the Jeep's occupants did not yield further evidence of illegal activity [Doc. 292 at 13]. But "patting down the subject of a *Terry* stop does

9

not signal the end of the detention, for law enforcement is permitted to investigate the circumstances that led them to stop the individual." *United States v. Foster*, 376 F.3d 577, 586 (6th Cir. 2004). In other words, the initial frisk and investigation were "only part of the detention." *Id.* Accordingly, Defendant Scales was not "free to leave" because law enforcement still had "reasonable suspicion of criminal activity" that had not been dispelled. *See id.*

**Second**, the "investigative means" law enforcement used were "the least intrusive means reasonably available" to confirm or dispel their suspicion. *See Davis*, 430 F.3d at 354. Handcuffing Defendant Scales was not overly intrusive. Law enforcement was "justified in believing that" Defendant Scales, who law enforcement was "investigating at close range," was "armed and presently dangerous" based on the information they received that the occupants of the Jeep were armed and had significant amounts of drugs in the Jeep [*See* Doc. 292 at 13]. *See Foster*, 376 F.3d at 587 (quoting *Terry*, 392 U.S. at 24). So, law enforcement did not "overstep[] the permissible bounds of the *Terry* doctrine by handcuffing" Defendant Scales. *See id.* (refusing to deem unreasonable the handcuffing of a defendant to conduct a pat-down so as to avoid concern about possible weapons within reach); *see also United States v. Jacob*, 377 F.3d 573, 579-80 (6th Cir. 2004) (analyzing cases); *Michigan v. Long*, 463 U.S. 1032, 1051-52 (1983) ("[A] *Terry* suspect in Long's position [might] break away from police control and retrieve a weapon from his automobile. . . . In such circumstances, we have not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter."). And the use of a drug-detection dog while Defendant Scales was lawfully detained was not intrusive. In fact, the "use of a well-trained narcotics-detention dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

10

Accordingly, Defendant Scales's challenges related to the traffic stop, brief detention, and free air sniff are not fruitful.

### B. Even if the Warrant to Search the Aldergate Way Apartment was Not Validly Issued, Officers Reasonably Relied on the Search Warrant.

No Party objected to the Report's conclusion that the search warrant for the Aldergate Way Apartment was issued without sufficient probable cause [*See* Doc. 327 at 1-2; Doc. 353 at 3]. So, the Court does not address that issue. *See* Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1); *United States v. Van Shutters*, 163 F.3d 331, 338 (6th Cir. 1998) (determining that search warrant affidavit was not "bare bones" only after assuming that probable cause was lacking). Nor does the Court adopt the Report's analysis on that point. Because even if the search warrant lacked probable cause, evidence from the search will not be suppressed because officers acted in objectively reasonable reliance on the search warrant, which was not "bare bones."

"[N]o Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding" against the individual whose Fourth Amendment right was violated. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, under the "good faith" exception, courts generally should not suppress evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). In assessing whether the good faith exception applies "courts ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting

*Leon*, 468 U.S. at 922 n.23). There are "four specific situations where the good faith reliance exception would *not* apply":

> (1) [W]here the supporting affidavit contained knowing or reckless falsity . . . ; (2) where the issuing magistrate failed to act in a neutral and detached fashion, and served merely as a rubber stamp for the police . . . ; (3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause, . . . or in other words, where the warrant application was supported by nothing more than a bare bones affidavit . . . ; and (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993) (cleaned up). Defendant here argues that this is a case of the "third scenario," where the affidavit "is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" [Doc. 327 at 3 (quoting *Leon*, 468 U.S. at 923); *see also* Doc. 292 at 43 n.10].

An affidavit is bare bones if it "states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). "Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" *Id.* (quoting *Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). By "contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *Id.* at 496-97 (quoting *Carpenter*, 360 F.3d at 596). Where a reviewing court is "'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is

12

not bare bones and official reliance on it is reasonable." *Id.* at 497 (quoting *Laughton*, 409 F.3d at 749-50).

Here, even if the affidavit supporting the search warrant failed to establish probable cause, the affidavit provided objectively reasonable grounds for an executing officer to believe that the search warrant was properly issued. *See Carpenter*, 360 F.3d at 595. **First**, the affidavit contained details about the affiant's training and education, including his credentials as a narcotics officer [Doc. 138-1 at 2-3]. *See Acosta-Barrera*, 819 F. App'x 366, 368, 372 (6th Cir. 2020) (holding that an affidavit was not bare bones in part because it detailed the investigating officer's relevant training and experience). **Second**, the affidavit detailed the suspected drug transaction and subsequent stop and search of the Jeep, which allegedly yielded, "6 ounces [o]f heroin individually packaged in small user amount baggys inside a larger bag," "a large amount of US Currency throughout the vehicle, and 2 handguns" [Doc. 138-1 at 4]. It also stated that "recovered from DAVIS was a key to the" Aldergate Way Apartment [*Id.*].[3] *See United States v. McCoy*, 905 F.3d 409, 416-17 (6th Cir. 2018) ("[I]t is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there"

---

[3] Defendant argues that the Report "incorrectly states that the key seized at the traffic stop established that co-defendant Davis lived at the Aldergate Way apartment" and that the Report "relies, in part, on the incorrect belief that heroin was seized from the Jeep" [Doc. 327 at 2, 6]. But the relevant inquiry is "whether the officers" executing the search warrant "had a reasonable basis to believe that the information that *was submitted* supported the issuance of the search warrant." *Carpenter*, 360 F.3d at 595 (emphasis in original). The Court must, therefore, assess the "incidia of probable cause" in the affidavit from the perspective of an officer executing the search warrant. *See id.* (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)); *see also Laughton*, 409 F.3d at 751-52 ("Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in the affidavit."); *United States v. Frazier*, 423 F.3d 526, 534-35 (6th Cir. 2005); *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006).

13

as long as the affidavit "establish[es] some other reason to believe that drugs or other evidence of crime [will] be found in the suspect's residence." (third alteration in original) (citations omitted)). ***Third***, the affidavit relayed that Defendant Scales and "DAVIS are both known subjects in an investigation into an on-going conspiracy to distribute heroin in the Knoxville, Tennessee, area" [Doc. 138-1 at 4]. ***Fourth***, the affidavit detailed an interaction law enforcement had with a confidential source ("CS") a mere month before, in which CS informed law enforcement of CS's basis of knowledge and provided law enforcement with some allegations of an ongoing drug distribution conspiracy involving Davis, Defendant Scales, and Wilson in Knoxville [*See id.*]. The affidavit stated that law enforcement corroborated some of CS's information and used the information to link "Emily" to the Aldergate Way Apartment—the same apartment to which Davis allegedly possessed a key while in the Jeep with drugs and firearms and at which CS (through a number of inferences and confirmatory investigatory work) told law enforcement Davis and Defendant Scales lived and "store[d] illegal drugs such as heroin, and bulk cash" when they were in Knoxville [*See id.*]. *See McCoy*, 905 F.3d at 419-21 (finding good-faith reliance where an informant reported that the defendant trafficked illegal drugs from the searched property). Therefore, a reasonably well-trained officer would not have known that the search warrant was invalid. *See Ward*, 967 F.3d at 554.

Defendant Scales argues that the "affidavit in support of the search warrant was bare bones and did not establish a minimally sufficient nexus of illegal activity" at the Aldergate Way Apartment [Doc. 327 at 11]. But the facts in the affidavit placed a key to the Aldergate Way Apartment in the Jeep on November 10, establishing a nexus between the criminal activity that day (the drugs ultimately located in the pants of an occupant of the Jeep) and the property to be searched (the Aldergate Way Apartment) [*See* Doc. 138-1 at 3-4]. And the purported corroborated

14

information from CS connecting (1) Defendant Scales and Davis to drug activity and (2) the storage of illegal drugs and bulk cash to the Aldergate Way Apartment, bolstered that nexus [*See id.* at 4]. The Sixth Circuit "has applied the good faith exception to warrants supported by far less information than" the affidavit in this case. *See Van Shutters*, 163 F.3d at 338 (describing such cases); *see also Frazier*, 423 F.3d at 536-37 (describing additional cases applying the good-faith exception); *Carpenter*, 360 F.3d at 593, 595-97 (holding that an affidavit established a sufficient nexus where the affidavit stated that, while conducting helicopter surveillance over a county, law enforcement observed that marijuana was growing near a residence and a road of unstated length connected the marijuana and the residence); *Leake*, 998 F.2d at 1361, 1366-67 (concluding that an affidavit was not bare bones where the only allegations in affidavit were from an anonymous tipster who stated that he observed marijuana in the basement of the subject house while performing maintenance on the house, while ultimately holding that the good-faith exception does not apply on other grounds).

And the cases on which Defendant Scales relies are unavailing because they lack the minimally sufficient nexus present in this case. *See Laughton*, 409 F.3d at 746-47, 749, 751 ("The application simply listed the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton."); *United States v. Brown*, 828 F.3d 375, 382-86 (6th Cir. 2016) ("In the present case, the search warrant affidavit contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there."); *Hython*, 443 F.3d at 488-89 ("The South Fifth Street transaction is not dated, and the affidavit contains no indication of ongoing investigation, subsequent or previous controlled buys, or further surveillance of the address or the female supplier."); *Ward*, 967 F.3d at 555-57 (holding that an affidavit is barebones where it

15

describes only undated past criminal charges, a trash pull conducted six (6) months after the event giving rise to criminal suspicion, and the presence of two (2) unidentified males at the subject house without indicating any suspicious activity); *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) ("The only connection in the affidavit between 228 Shelby Street and drug trafficking was that Jackson police arrested McPhearson at his residence and found crack cocaine in his pocket in a search incident to the arrest."); *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *4-5 (6th Cir. Jan. 6, 2023) ("The only fact alleged connecting 501 Tiffin Avenue to drug activity was a statement that Grant 'parked to the rear, north side of a secondary location associated with Grant, 501 Tiffin Avenue, Sandusky, Ohio. [Police] then observed Grant walking away from the rear, north side of 501 Tiffin Avenue.'" (alteration in original)). Accordingly, the "good faith" exception applies.

### III. Conclusion

For the reasons above, the Court **GRANTED** Defendant Scales's "Motion to Adopt" [Doc. 325]. And the Court **GRANTS** Defendant Scales's other "Motion to Adopt" [Doc. 135]. Upon de novo review, the Court **OVERRULES** (1) Defendant Scales's "Objections to Report and Recommendation (Doc. 292) Regarding Defendant Jeffrey Scales's Motion to Suppress" [Doc. 327] and (2) the "Objection by the Defendant Keyasia Davis" [Doc. 309] and "Defendant Simmon's Objection" [Doc. 310] that Defendant Scales adopted, as they relate to Defendant Scales. The Court **ACCEPTS** and **ADOPTS** the relevant portions of the Report [Doc. 292] under 28 U.S.C. § 636(b)(1) and Fed. R. Crim P. 59(b)(3). And the Court **DENIES** (1) the "Motion and Memorandum of Law of Defendant Keyasia Davis to Suppress Evidence Seized as the Result of a Traffic Stop" [Doc. 134] as it relates to Defendant

16

Scales and (2) Defendant Scales's "Motion and Memorandum to Suppress Evidence Seized at 9310 Aldergate Way, Apt. #4107" [Doc. 132].

SO ORDERED.

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge
